**TIME, Inc., v. BARSHAY.**

District Court, S. D. New York.

May 25, 1939.

Cravath, de Gersdorff, Swaine & Wood, of New York City (John F. Harding, of New York City, of counsel), for plaintiff.

Barshay, Frankel & Rothstein, of New York City (Albert E. Schwartz, of New York City, and Jacob Z. Hoffman, of Brooklyn, of counsel), for defendant.

GALSTON, District Judge.

The jurisdiction of the court rests upon the alleged infringement of plaintiff's trade-marks No. 246,868, issued by the United States Patent Office September 18, 1928 for the trade-mark "Time"; certificate No. 253,432, issued February 26, 1929, also for the trade-mark "Time", and certificate No. 330,900, issued December 17, 1935, for the trade-mark "The March of Time". The first two of these trade-marks are for a weekly magazine and the third is for motion picture films, sound films, combined sound and motion picture films, and motion picture films for use in connection with synchronizing apparatus for simultaneously reproducing coordinated light and sound effect.

The plaintiff publishes and distributes a news magazine and conducts radio broadcast programs and motion picture features.

The defendant, on or about December 31, 1936, filed a certificate in the New York County Clerk's office to do business under the assumed name, "The Voice of Time", and it is alleged causes labels, business cards and other advertising matter to be printed upon which the name, "The Voice of Time," is prominently displayed. It is also charged that the defendant sells phonograph records reproducing famous speeches as broadcast over the radio, in infringement not only of the plaintiff's registrations of the aforesaid trade-marks, but also of its common law rights by applying to these records the name, "The Voice of Time", thereby misleading the public into believing that it is procuring plaintiff's products when in fact it is not doing so.

The defendant contends that the trade-marks are invalid and that therefore the court is without jurisdiction. Moreover he contends that even if valid the marks are not infringed and that he has committed no act of unfair competition.

A preliminary injunction was granted on the motion of the plaintiff on January 22, 1937, from which no appeal was taken, restraining the defendant pending trial from selling the accused phonograph records.

Time, Incorporated, the plaintiff, is a New York corporation. It publishes "Time", a weekly news magazine, and "Life", a weekly pictorial magazine. It also produces periodic radio broadcasts designated "The March of Time", and motion pictures under the title "The March of Time".

In March, 1931, the "The March of Time" broadcast was begun and was carried for a thirteen week schedule. Again in September, 1931, the broadcasts were resumed through February, 1932, for twenty-five broadcasts; then again from September, 1932, through March, 1933, over a wide network, and each year thereafter until August, 1935, when the program was changed from a once-a-week to a five-times-a-week broadcast, from August 22 through September 25, 1936, after which it reverted to a weekly broadcast. The program is of news by means of a re-enactment or dramatization of the important news events. In connection with these broadcasts the words, "The March of Time" are always spoken. The "The March of Time" radio programs have been the subject of much publicity both in newspaper articles and trade papers; in addition the plaintiff distributed to about three million people a booklet called "The Story of Time" in which all of its enterprises are described. Other forms of pro-

872

motion and advertising material were circulated for the "The March of Time" radio program, at very considerable expense to the plaintiff.

The "The March of Time" newsreel was first produced under that name in February, 1935. It appears every four weeks and is exhibited to an average of 5,500 theatres throughout the United States. The reel comprises scenes of various news events and related scenes under appropriate titles. The portrayal is accompanied by a running comment of the narrator. This production has been the subject of approval by the Academy of Motion Picture Arts and Sciences under a special award to " 'The March of Time' for its significance to motion pictures and for having revolutionized one of the most important branches of industry, the newsreel." Other awards in connection with these newsreel productions were made by the American Society for the Control of Cancer; for the best short series of 1936–1937 season, the J. Emanuel Publication Medal. For the portrayal, "The Evils of the Spoils System" "The March of Time" was placed on the 1937 honor roll by the Civil Service Assembly of the United States and Canada.

In connection with its radio program the slogan "The Voice of Time" was first used in "Time" magazine on October 5, 1936.

Westbrook von Voorhis, in addition to acting as narrator for the radio and moving picture productions, addresses gatherings such as chambers of commerce, advertising clubs and theatres, and invariably is introduced as "The Voice of Time."

The "Time" magazine, first appearing in March, 1923, has been published weekly ever since. Its circulation for 1936 was in excess of 600,000. In addition to its United States trade-mark registrations it has obtained registration in Great Britain, Canada, Australia, The Irish Free State, Union of South Africa, Italy, Germany and Cuba. For the purpose of identifying its trade-marks in the mind of the public, the plaintiff has expended for advertising approximately four and a half million dollars.

Now as to the defendant, in December, 1936, it published an advertisement in the Herald Tribune of "The Voice of Time" records. Such phonograph records, offered by the defendant for distribution, entitled "Farewell Address of His Majesty, King Edward VIII * * * The Voice of Time", were produced at the trial.

Thus it appears beyond any question that the plaintiff has built up a well identified good will through the use of its trade-marks "Time" and "The March of Time" and that these trade-marks are directly associated with its publications, its radio program and its newsreel productions. It likewise appears that the plaintiff has built up a certain good will in connection with the legend or slogan "The Voice of Time" and that the defendant's use of a similar phrase is an infringement of the plaintiff's trade-mark "The March of Time", as well as an unfair competition with the plaintiff in connection with its trade-marks and the good will attending the plaintiff's slogan "The Voice of Time."

It is urged that the plaintiff's trade-marks are generic terms and are used in "everyday English" and that in consequence they are invalid as trade-marks. That does not correctly state the law. Sec. 85 of Title 15, U.S.Code, 15 U.S.C.A. § 85, excludes from registration among other marks those that consist "merely in words or devices which are descriptive of the goods with which they are used, or of the character or quality of such goods, or merely a geographical name or term".

It will not be necessary to discuss, on the question of technical infringement, certificate of trade-mark No. 246,868, nor certificate of trade-mark No. 253,432, covering the term "Time", for these marks are applied to prints and publications, specifically a news magazine, and they are not infringed by the legend appearing on defendant's phonograph records, since phonograph records are not merchandise of the same descriptive properties.

However, the trade-mark "The March of Time" is valid and infringed. It does not describe the motion picture films nor sound films, nor the radio broadcast to which it is applied, and in consequence is not within the classes excluded from registration under the aforesaid section of the Trade-Mark Act. It was registered on an application filed May 28, 1935, and has been applied to the films since August 11, 1934. The general use of the name and its identification with the business of the plaintiff would be interfered with by the use of an essentially similar trade-mark in a closely affiliated art. Indeed it appears that the "The March of Time" division of Time, Inc., has already experimented with the recording of radio broadcasts wherein they investigated the possibilities of record-

ing their radio broadcasts for use in schools and other places. Motion picture films involve the reproduction of sound. Phonograph records do the same. In the ordinary marts of trade it is most likely that a phonograph record stamped with the mark, "The Voice of Time" would be associated with "The March of Time" as generally used by the plaintiff. With a wide variety of choice available there should be no effort, conscious or otherwise, to invade plaintiff's good will.

■ Indeed, in addition to the infringement of the technical trade-mark "The March of Time", the defendant's use of the trade-mark "The Voice of Time" is in unfair competition with all of the plaintiff's marks. Defendant commenced doing business under the name "The Voice of Time" as late as December 12, 1936. At least one instance of actual confusion between the business of plaintiff and defendant was shown by the Hancock letter which while intended for the defendant was sent to the office of the plaintiff. Even though there were no trade-mark infringement this court would retain jurisdiction to determine the question of unfair competition in this case under well established authority. Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; Armstrong Paint & Varnish Works v. Nu-Enamel Corporation, 305 U.S. 315, 59 S.Ct. 191, 195, 83 L.Ed. 195.

In the latter case the plaintiff had registered its trade-mark "Nu-Enamel" under the act of March, 1920, for mixed paints, varnishes, paint enamels, prepared shellacs, stains, lacquers, liquid cream furniture polishes and colors ground in oil. The defendant adopted the name "Nu-Beauty Enamel". The District Court determined that "Nu-Enamel" was not a valid trademark and refused jurisdiction of unfair competition, both parties being residents of Illinois. Mr. Justice Reed wrote: "As a consequence of these remedial provisions, when a suit is begun for infringement, bottomed upon registration under the 1920 act, the district courts of the United States have jurisdiction. Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits. * * * Once properly obtained, jurisdiction of the one cause of action, the alleged infringement of the trade-mark, persists to deal with all grounds supporting it, including unfair competition with the marked article."

Again the opinion adds: "Registration of 'Nu-Enamel' furnished a substantial ground for federal jurisdiction. That jurisdiction should be continued to determine, on substantially the same facts, the issue of unfair competition."

The fact that the trade-mark "The March of Time" was registered under the Act of 1905 does not, of course, in any way alter the applicability of the principal enunciated in the foregoing decisions. See, also, L. E. Waterman Co. v. Gordon, 2 Cir., 72 F.2d 272, 273, in which Judge Learned Hand wrote:

"In point of jurisdiction we might find difficulty, were it not for the recent decision of the Supreme Court in Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148.

* * * * * *

"In the case at bar it is only necessary that we should hold that the cause of suit upon the registered trade-mark was substantial enough to support the jurisdiction of the District Court."

■ Now the field in which confusion might operate is extensive, not because a phonograph record would be confused with a sound motion picture film, but rather because of confusion that might arise as to the source or origin of the goods. The law will not countenance the passing off of one's goods as the goods of another. American Steel Foundries v. Robertson, 269 U.S. 372, 46 S.Ct. 160, 70 L.Ed. 317. It is no answer to say that phonograph records have not the same descriptive properties as sound motion pictures. In Yale Electric Corporation v. Robertson, 2 Cir., 26 F.2d 972, 973, the conflict was between the use of the mark "Yale" on electric flash lights and the registered mark "Yale" upon many sorts of hardware, but especially locks and keys. The court said: "The law of unfair trade comes down very nearly to this—as judges have repeated again and again—that one merchant shall not divert customers from another by representing what he sells as emanating from the second. This has been, and perhaps even more now is, the whole Law and the Prophets on the subject, though it assumes many guises."

See, also, California Packing Corporation v. Tillman & Bendel, Cust. & Pat. App., 40 F.2d 108, and L. E. Waterman Co. v. Gordon, supra. In that case the registered trade-mark "Waterman" was for

fountain pens, mechanical pencils and writing instruments. The defendant sought to use the name "Waterman" upon razor blades and Judge Learned Hand wrote: "It is now well settled in this country that a trade-mark protects the owner against not only its use upon the articles to which he has applied it, but upon such other goods as might naturally be supposed to come from him. Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407, L.R.A.1918C, 1039 (C.C.A. 2); Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674 (C.C.A. 3); Vogue Co. v. Thompson-Hudson Co., 300 F. 509 (C.C.A. 6); Wall v. Rolls-Royce, 4 F.2d 333 (C.C.A. 3); Yale Electric Corporation v. Robertson (C.C.A.) 26 F.2d 972; Duro Co. v. Duro Co., 27 F.2d 339 (C.C.A. 3). There is indeed a limit; the goods on which the supposed infringer puts the mark may be too remote from any that the owner would be likely to make or sell. It would be hard, for example, for the seller of a steam shovel to find ground for complaint in the use of his trade-mark on a lipstick. But no such difficulty arises here; razor blades are sold very generally by others than razor blade makers, and might well be added to the repertory of a pen maker. Certainly when the infringement is so wanton, there is no reason to look nicely at the plaintiff's proofs in this regard. On the merits there can therefore be no question that the judge was right."

The plaintiff may have a decree in accordance with the foregoing opinion. If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.