Emilio Nunez, J.
Plaintiff Helen Gurley Brown is the author and plaintiff Bernard Geis Associates the publisher of a book entitled “Sex and the Single Girl”. Plaintiff Warner Bros. Pictures, Inc., has purchased the exclusive motion picture rights in the book and its title.
Defendant Lyle Stuart, Inc., is the publisher and defendant Albert Ellis the author of a book entitled 11 Sex and the Single Man”.
Publication of “ Sex and the Single Girl ” commenced in May, 1962. It appears from uncontradicted testimony and I find that defendant Ellis was informed of the proposed title of Mrs. Brown’s book prior to its publication.
“ Sex and the Single Man ” made its first public appearance in October, 1963.
Mrs. Brown’s book met with considerable success and was for some time on the best-seller lists of several newspapers throughout the country. It was widely promoted and advertised. Following the success of the book its subsidiary rights acquired and were sold for considerable value. Most of these *910 subsidiary rights have been utilized and paid for. Sale of her book in hard-cover form has concededly passed its peak as evidenced by the fact that much cheaper paperback editions were on the market at the time of trial.
Plaintiffs claim that defendants are now illegally deriving the benefit of their efforts and success in the promotion of their book and a motion picture now in production. They contend that the public has become familiar with the title “ Sex and the Single Girl ” and that the appearance of another book and motion picture under the title of “ Sex and the Single Man ” will tend to confuse the purchaser or the movie patron. Plaintiffs claim that their title “ Sex and the Single Girl ” has acquired a secondary meaning in the use of which defendants are unfairly trading by using what plaintiffs call the similar title “ Sex and the Single Man They seek judgment enjoining defendants from using the title “ Sex and the Single Man ” as the title of any publication or motion picture under the rules of unfair competition.
If plaintiffs’ title has acquired a secondary meaning and the defendants’ use of an allegedly similar title constitutes an unfair business practice and unfair competition, a court of equity has the power to grant the relief sought. (See 1 Callman, Law of Unfair Competition and Trade Marks [1945], p. 35; Dior v. Milton, 9 Misc 2d 425.) In Ball v. United Artists Corp. (13 A D 2d 133, 137 [1961]) the court said: “ Coneededly, however, words of common speech, including commonplace expressions, may, by reason of their use and association with particular goods or with a particular business or enterprise, acquire a special significance with the general public or a segment thereof, namely, they may become generally known and referred to as the title or name for such goods, business or enterprise. This special significance acquired by a title or name is denominated in law as a ‘ secondary meaning ’ (see 1 Nmms, Unfair Competition and Trade-Marks [4th ed.], § 37); and where a title or name acquires a secondary meaning, the owner of the goods, business or enterprise labeled thereby, becomes possessed of legally enforcible rights.”
Unfair competition activities are difficult to enumerate. Generally, however, the courts will restrain commercial unfairness when it appears that there has been a misappropriation, for the commercial advantage of one person, of a benefit of property right belonging to another. (Metropolitan Opera Assn. v. Wagner-Nichols Recorder Corp., 199 Misc. 786, affd. 279 App. Div. 632; Handler, Unfair Competition, 21 Iowa L. Rev. 175; 1 Nims, Unfair Competition and Trade-Marks *911 [4th ed., 1947], ohs. I, II; Schechter, Bational Basis of Trademark Protection, 40 Harv. L. Bev. 813.)
Are the two titles so similar that the public will be confused and thus defendants will reap the benefit of plaintiffs’ labor and large expenditures in advertising- the book and motion picture? Defendants have spent considerable sums of money in advertising and in publishing and distributing their book. No contention is made by plaintiffs that defendants have issued any false or misleading advertising or promotional matter. Their sole claim of unfair competition is predicated upon the alleged similarity of titles, likelihood of public confusion and the charge that defendants have unlawfully striven to trade on Mrs. Brown’s reputation and literary effort. Defendants deny all" these charges and contend that the eminence of defendant Ellis as an export sexologist afforded them the sole springboard for their book. An examination of the books and their respective jackets reveals a number of marked distinctions that render it wholly improbable that the public would confuse the separate identity of the two works. Thus, the defendants’ book is bulkier; the colors of the jackets are entirely different; the front of the plaintiffs’ jacket has a summary of the book’s content while the defendants’ is silent on that score; the back of the plaintiffs’ jacket contains a prominent photograph of Helen Gurley Brown and biographical data about her whereas the back of defendants’ jacket merely lists the earlier books by defendant Ellis; the different imprints of the respective publishers of the works are readily apparent; and the spines of the jackets differ materially to the extent that the defendants ’ feature the name ‘ ‘ Ellis ’"’ at its top while that place is occupied by the title of the book in the case of the plaintiffs’.
‘ ‘ Sex and the Single Girl ’ ’ was the first literary effort of its author who has had no extended formal education, training or experience in the analysis of problems relating to sex or in rendering advice on that subject. Her book does not purport to be a scientific study or treatise but rather a compendium of hints, tips and advices to single girls on their social relationships with men, written in a light and conversational manner.
“ Sex and the Single Man ” is a work devoted to a discussion of sex and associated problems and the author’s suggested solutions.
Where titles of books are involved, as distinguished from those of plays, motion pictures and the like, the court will be much more reluctant to find unfair competition because book buyers generally place more importance upon the author than upon the title of a literary work. See 11 The International *912 Protection of Literary and Artistic Property ’ ’ by Stephen P. Ladas (The Macmillan Company, 1938) where the author writes (p. 738): “ The cases decided in the United States indicate that the Courts are more ready to protect titles of plays and motion picture films under the law of unfair competition than titles of books and other publications, with the exception of periodicals, dictionaries and the like. The reason for this is that deception is easier in these cases, whereas in the case of books, stories, etc., the public gives greater attention to the name of the author than to the title of the work. ’ ’
In view of the fact that plaintiffs Brown and Geis Associates have reaped most of their benefits from the impact of the book’s title and that defendants have expended- large sums of money in publishing and advertising their book, and for all the other foregoing reasons, I have concluded that these two plaintiffs are not entitled to the relief they seek. I have, however, reached a different conclusion with regard to plaintiff Warner Bros. Pictures, Inc. This plaintiff has acquired at a substantial cost the exclusive motion picture rights in the book and title “ Sex and the Single Girl ”. Since 1962 Warner has conducted an extensive and costly advertising and promotional campaign publicizing the forthcoming motion picture bearing the same title as the book. Prominent artists were engaged to act in the picture to be released in the Fall of this year; it has been practically completed at a cost of about three million dollars. It is estimated that at least another half a million dollars will have been spent by the time it is actually released for exhibition to the public. Warner is fearful that defendants, taking advantage of their efforts and extensive advertising and promotion of “ Sex and the Single Girl” will sell motion picture rights to their book and title thus making it possible to give the name to any film and cause confusion in the minds of the public. Plaintiff Warner contends that people who have heard of and who have seen advertisements of its picture would be misled and confused upon seeing the title of the other. Courts have protected the following titles: “The King’s Sea Food” v. “ King of the Sea ” (Famous Sea Food House v. Skouras, 272 App. Div. 258 [1st Dept., 1947]; “ March of Time ” v. “ Voice of Time ” (Time, Inc. v. Barshay, 27 F. Supp. 870 [Dist. Ct., S. D. N. Y. 1939]); “ The Fifth Column ” v. “ Fifth Column Squad ” (Hemingway v. Film Alliance, 174 Misc. 725 [Supreme Ct., N. Y. County, 1940]); “The Gold Diggers” v. “Gold Diggers of Paris ” (Warner Bros. Pictures v. Majestic Pictures Corp., 70 F. 2d 310 [C. C. A. 2d, 1934]); “Blind Youth” v. *913 11The Blindness of Youth^ (National Picture Theatres v. Foundation Film Corp., 266 F. 208 [1920]); “ Playboy v. Playgirl ” (H M H Publishing Go. v. Hale, 156 F. Supp 594 [1957]).
At page 4 of defendants ’ brief, the following statement appears: “ The fact is, however, that the defendants have not taken a single step to explore or exploit motion picture rights to their book and have no intention of doing so. ‘ Sex and the Single Man ’ is a work devoted to a discussion of sex problems and their solutions and is scarcely the kind of book that lends itself to motion picture treatment.”
The court completely agrees with the latter statement. A motion picture with the title of defendants’ book could not possibly portray the book’s content. If the title were to be used with an attempt to palm the motion picture off as being based upon the book, it would constitute a fraud upon the public.
Plaintiff Warner should be protected in the use of its widely publicized title and its large investment in its motion picture. Presumably defendants will suffer no harm. The relief requested by plaintiff Warner Bros. Pictures, Inc., will therefore be granted. No costs are awarded any party.