## SWIFT & CO. v. RAY SALES CO., Inc.

District Court, S. D. New York.

Oct. 21, 1935.

James F. Hoge, of New York City (Edward S. Rogers, of New York City, William T. Woodson, of Chicago, Ill., and Clifton Cooper, of New York City, of counsel), for plaintiff.

Newman, Hauser & Teitler, of New York City (S. L. Teitler, of New York City, of counsel), for defendant.

CAFFEY, District Judge.

There are fifteen things in this case which are either undisputed or are satisfactorily proved:

1. The plaintiff's articles include numerous by-products of the meat packing industry. Among them from time to time have been soaps, shampoos, and cleansers. These, as it seems to me, come within the general class of toilet goods.

2. The defendant has or has had seven articles. These are shaving cream, dental cream, face cream, foot powder, foot cream, disinfectant, and mouth wash, the mouth wash now having been discontinued.

3. I cannot escape finding that the articles of the two parties, in so far as we are concerned with them, belong in the same general class, as the phrase "general class" is used in the law.

4. Both sets of articles have been and are sold in the same markets. They necessarily come in competition in those markets.

5. For something like fifty years, the plaintiff has marketed its articles, marked on cartons or other wrappers with the name "Swift" or "Swift's." Applying the test, for the period with which we are concerned, it is perfectly clear that such commercial use by the plaintiff of the name had continued for considerably more than forty years prior to the beginning of this suit, even prior to any use by the defendant of the name "Swift."

6. Under the state of facts recited, it is also clear that, during the forty-year period, the name "Swift" had acquired a secondary meaning. It had such meaning for years previous to its being employed by

the defendant. The name was clearly indicative of the origin of the goods to which it was affixed. That is abundantly established by the evidence.

7. The plaintiff registered the trademark "Swift's" in 1931.

8. The predecessors of the defendant began marketing their articles in 1928 or 1929, at the most something less than three years before registration of the plaintiff's trademark and less than five years prior to the beginning of this suit.

9. The defendant marketed its articles under the name of "Swift Chemical Company."

No one connected with the defendant or its predecessor had the name "Swift" as a proper name. The witness Ferris, who substantially is the defendant, is not and never has been connected with the plaintiff, although he explained that preceding his going into his present business he had been an employee of one of the large packing companies.

The name "Swift Chemical Company" is not registered as a fictitious name. I do not accept the testimony that it was. If it had been, it was a sufficiently significant fact to have been established by the ordinary method of proof, which is to bring here the original or a certified copy of the adoption of that fictitious name under which to do business, in accordance with the laws of the state of New York.

The defendant has never marketed its products under the name of "Ray Sales Corporation," which is its proper corporate name.

The defendant has sold all of its articles marked either "Swift" or "Swift's," in several instances using the name in each form on the cartons or other wrappings of its articles.

Lastly, from the beginning the defendant has marked on its articles the phrase "Another Swift Product," and that mark was on the initial product sold, as well as on the subsequent articles.

10. Prior to the date of the defendant's beginning business or of any of the defendant's predecessors beginning business, as well as since, the plaintiff has widely advertised throughout the United States, including in the city of New York, the sale of its goods under the name "Swift" or the name "Swift's." Through the wide advertisement given them, both those names have necessarily gained a significance in the minds of the buying public.

11. The defendant has never advertised under its own name or under any other name. There has been no advertisement whatsoever by the defendant.

12. The conduct of the defendant, in making use of the names "Swift" and "Swift's," was plainly calculated to convey to purchasers the notion that the origin of the goods was the plaintiff, and was thereby calculated to deceive prospective purchasers.

13. I cannot escape the conclusion that the use of the word "Swift" by the defendant, being a representation, as I conceive it, that the goods had originated with the plaintiff, was with intention to deceive the buying public.

14. Such conduct by the defendant constituted a fraud upon the public, as well as upon the plaintiff.

15. Throughout the period involved the defendant has competed unfairly with the plaintiff and has sought to get the benefit of the good will of the plaintiff, established over a period of fifty years of use of the word "Swift," a name which, more than forty years before the defendant used it, had acquired a secondary meaning.

There are six contentions by the defendant. These will be taken up in turn.

(1) The defendant says that the word "swift" is merely a dictionary word. The word "swift" is in the dictionary. Nevertheless, the word "Swift" in this case, as is incontrovertibly established, previous to its use by the defendant, had acquired a secondary meaning and that secondary meaning was indicative of the origin of the products we are dealing with.

(2) It is next said that the word "Swift" is descriptive of the quality of the articles. The word "Swift," as applied to the articles to which the defendant attached it, however, is entirely inapposite to indicate or point to the quality of the goods, certainly in all instances save the one of shaving cream, and, so far as I can see, the salability of shaving cream would be little, if at all, enhanced or even affected by reason of the use of the word "Swift" in connection with that article as a method or device for ascribing to it a speedy quality. However that may be, if the defendant desired merely to make the representation that its products possessed an element of quickness, it had a wide choice in the selection out of

the dictionary of other words to be employed to indicate the quality of speed in connection with use of its articles. But it did not choose any such alternative word or synonym. On the other hand, it selected a name which, in so far as the name in and of itself is concerned, had theretofore acquired a secondary meaning, which had theretofore been widely advertised, and which had theretofore become a property right of the plaintiff.

■ (3) As I understand it, the defendant contends that there was dissimilarity between its articles and the articles of the plaintiff.

Certainly some of the articles of both parties come within the same general class. This cannot be denied so far as concerns soaps and shampoos. It seems to me also that cleansers and disinfectants are plainly in the same general class.

Moreover, in determining whether or not two general sets of articles belong in the same class, I do not think we can consider or look to such slight differentiations as are sought to be invoked by the defendant.

It is stated that all of the products of the defendant are in the class of toilet goods. Nevertheless, it is true that, during the period covered by the testimony, the plaintiff put out toilet articles. That is enough for the purpose of decision in this case.

■ (4) Next, the defendant claims that its cartons and wrappings are different from those of the plaintiff. True, the difference exists so far as shape and color are concerned; but that is not the test as to whether there was unfair competition in the use of the name "Swift." The name was used on all the cartons and wrappers. Without exception, the cartons and wrappings in evidence employed by the defendant bore on them the statement "Another Swift Product." They never bore the name of Ray Sales Corporation; nor was there on them any indication, or was there any attempt to indicate or give notice to the buying public, that they were not produced by the plaintiff or that they did not originate with the plaintiff.

■ (5) The defendant says that it proposed to relabel its articles and that its offer was rejected by the plaintiff. If the offer be material, the testimony is that it was conditional. As I understand the witness who dealt with the subject, the defendant wanted to be paid $4,000 or $5,000 as the price for consent to change its markings. A conditional offer was no offer at all.

However that may be, I do not think it is material whether the defendant made an offer or not. If the plaintiff had prior right to use of the name, and I think it did have the right, it is entitled to have such right enforced.

■■ (6) Finally, the defendant urges that the plaintiff's trade-mark was registered as to soap. That is true. Nevertheless, this does not remove from the case the ground on which, or one of the grounds on which, the plaintiff seeks recovery, namely, unfair competition; and that ground is plainly established.

I hold, therefore, as follows:

First, the trade-mark is valid.

Second, the trade-mark has been infringed.

Third, the defendant is guilty of unfair competition.

The result is that there will be a decree for the plaintiff, with the usual provisions for an injunction and an accounting.

Settle decree on ten days' notice.