**AMERICAN AUTO. ASS'N, Inc. et al. v. ROTHMAN et al.**

Civ. 11350.

United States District Court
E. D. New York.

Nov. 14, 1951.

194

Leo T. Kissam, Esq., New York City (Eric Nightingale, New York City, of counsel), for plaintiffs.

James J. Cally, New York City, for defendant.

BYERS, District Judge.

This is a plaintiffs' motion to strike an answer, to dismiss counterclaim, and to grant summary judgment to plaintiffs under Rule 56, Fed.Rules Civ.Proc. 28 U.S. C.A., because it now appears that there is no genuine issue as to any material fact, in view of the testimony revealed in the respective depositions of the defendant and her husband.

The cause in general resembles the one instituted by these plaintiffs against Murray Spiegel, doing business as Lake Service Station, American Automobile Ass'n v. Spiegel, D. C., 101 F.Supp. 185, and much that was written in granting a similar motion in that case applies to this controversy. For instance, it is unnecessary to repeat what was written in reference to the local law, known as the Administrative Code, Sec. B36–103.0.

This defendant seems to be the owner and proprietor of a filling station at 50 Flatbush Avenue Extension, Brooklyn, which she says she acquired some six years ago, or in 1945.

The defendant's registered business style is "H.A.A. Service Station" according to Certificate dated December 6, 1948, and filed in the office of the County Clerk eight days later.

As might be expected, the letters H.A.A. at the time the complaint was filed were reproduced and displayed in an oval sign over the words "Service Station" in such a way that the top of the H. was coincident with the oval itself and the vertical sides of that letter slanted so as to converge above the cross member so that the first letter appeared to be a capital A, not an H.

Any remote shadow of possible inadvertence in this showing would be dispelled by the counterclaim which asserts that on or about October 31, 1947, the Club entered into the familiar contract with the defendant such as is described in the Spiegel Case. That without justification the contract was thereafter abrogated by the plaintiffs (no approximate date is stated) and that "defendant had gone through (sic) great expense at the behest of the said plaintiffs, and as a consequence thereof has been damaged in the sum of Six Thousand, Eight Hundred Dollars" for which judgment is demanded. The counterclaim is denied in a Reply which was timely filed.

This motion raises the question of the legal efficacy of the counterclaim to present

an issue of fact which can be resolved only by the procedure of a trial.

In addition to the counterclaim, the answer contains as a "separate and distinct defense" the allegation that the plaintiffs "have been violating the Fair Trade Act of the State of New York, and as such has (sic) interfered with the business of the defendant above named".

In addition to formal matters touching the corporate nature, functions and membership of the plaintiffs, the complaint alleges eleven registrations in the United States Patent Office of the AAA trademark, and the renewal of three of them in 1936 and 1942, respectively; also the display by the defendant, without the consent of either of the plaintiff Associations, of the registered trade-marks or colorable imitations thereof in connection with her business; namely, that of "an automobile service station", and that she "deals in goods competing with those of plaintiffs and the related companies of the Association, including gasoline, oil, automobile supplies and accessories, printed maps, tire covers, books, pamphlets, * * *".

That the defendant's use of the trademark is likely to and does cause confusion, and does deceive purchasers "as to the source or origin of such goods and services" thus infringing the trade-mark.

The same alleged conduct of the defendant is said to result in "attempting to lead members of the Club and the Association and the public at large, including those traveling among the several States, to believe that defendant has been approved by the Association and/or the Club and is an organization related to and legitimately affiliated with plaintiffs or one of them, thereby trading upon the good will and reputation of the plaintiffs and unfairly competing" with them.

The defendant generally denies the foregoing, but in view of her testimony and that of her husband as elicited in their respective depositions as illuminated by the exhibits, it will be seen that the fact of the display of the above described sign or signs by the defendant is not in dispute; the only possible subject for discussion being whether the sign as now used, from which the oval seems to have been removed, whereby the letter H with its converging top members is made to look a little less like an A than in the version of the sign used when the action was started, serves to defeat the plaintiffs' cause as pleaded.

■ There is no hesitation, so far as this court is concerned, in holding at once and without hesitation, that even the present arrangement and display of the letters H. A. A. by the defendant is confusingly similar to the three A's and their presentation in the emblem and symbol of the plaintiffs, and in the registered trade-mark of the Association; further, that the defendant's imitation thereof has been deliberate and intended to proclaim that she is a dealer authorized to display the three A's in the distinctive arrangement that identifies the plaintiffs, and the dealers authorized by the Club so to announce, to the knowledge of the defendant. The absence of the initial letter A, or H, in the name of the defendant is not without significance in this connection.

■ Turning now to the separate defense of alleged violation of the Fair Trade Act of New York, General Business Law, Mck.Consol.Laws, c. 20, § 369–a et seq., the defendant stated in her deposition that she wouldn't know anything about that; similarly, when asked how the plaintiffs had interfered with her business. In view of these answers, it would be proper to inquire of the defendant's attorney whose name is subscribed to the Answer according to Rule 11, what "good ground" there was to support so much of this pleading interposed for his client. This opinion is intended to propound the query, to which a written explanatory statement is required to be filed.

■ The defendant's brief in opposition to this motion does not discuss this "separate and distinct defense", and the conclusion is inevitable that it was not presented in order to raise any meritorious issue; it will therefore be disregarded for present purposes, since no evidence on the subject is even hinted at in the depositions of the defendant and her husband.

The counterclaim is not supported by any testimony concerning any contract what-

ever between the Club and the defendant. Again, her brief is silent on this subject.

Her testimony is (page 15):

"Q Have you or has anyone on your behalf made an application for affiliation to the Automobile Club of New York? A My son did. (He is said to be unavailable as a witness, being in the U. S. Army and stationed in Germany.)

"Q When was that? A I wouldn't know exactly.

"Q Approximately? A About four years ago. (i. e. 1947) I wouldn't know exactly.

"Mr. Cally (defendant's attorney): Four years ago.

\*     \*     \*     \*     \*     \*

"Q Was the application accepted or rejected? A It was accepted.

"Q Do you have any correspondence with the Club in your possession? A No, not in my possession.

"Mr. Cally: She wouldn't know about it.

Your son took care of it; is that right?

"The Witness: That's right.

\*     \*     \*     \*     \*     \*

"A It is true, that he became a member.

"Q Do you have a copy of the contract referred to in your answer? A I don't have a copy, no.

\*     \*     \*     \*     \*     \*

"Q. Have you made any effort to locate it? A No, I didn't.

\*     \*     \*     \*     \*     \*

"Q (The attention of the witness was drawn to paragraph sixth of the answer) Will you tell me, please, what action was taken either by the Club or the Association which you interpreted as disregarding the agency? A They just sent in a letter saying that they are not dealing any more with this gas station; that is all. For no reason at all. Somebody put a complaint in.

"Q Were you familiar with the terms of the agreement? A No. Somebody didn't like the way they were spoken to.

"Q (Calling attention to the $6800.00 item) Can you tell me in what respect you have been damaged by any actions of the plaintiffs? A We had to buy tow trucks and small trucks. One wasn't enough, he wanted more. So we went and bought more.

"Q Who bought them? A Morris Rothman bought them. (The defendant's husband is Paul Rothman, also known as Morris Paul Rothman.) Note: There is no assertion that the trucks are not still of the defendant's ownership.

"Q So you are not familiar with how this figure of $6800.00 was arrived at? A No."

■ Turning now to the husband's deposition, it appears that defendant's attorney produced on March 27, 1951, and there was marked as Plffs Ex.3 for Identification, a Service Station Contract, Station No. BK–85, purporting to be signed by Pate's Service Station, by Martin Pate, Prop., and the plaintiff Club, dated October 31, 1947. The attorney stated that he had obtained it from the defendant and that it was the only paper in his possession, and he added: "I do not know if there are any other subsequent agreements."

The Answer was filed on February 17, 1951 (less than six weeks before the taking of the deposition), so if he then had "good ground" to support the allegation of the counterclaim respecting the defendant's alleged contract with the Club, that "good ground" could scarcely have disappeared when the above deposition was taken, and his statement above quoted is apparently incompatible with the allegation of the pleading now under examination. As to this, the court is hereby making the same inquiry as with reference to the first defense, deeming the intent and purpose of Rule 11 so to require.

■ Since the present showing is that no such contract as the counterclaim alleges ever came into existence, that portion of the defendant's pleading has not been sufficiently substantiated to stand in the way of granting the motion of the plaintiffs, because no genuine issue of fact in respect of it can be deemed to be present.

The Pate Service Station contract was subject to termination by either party, on seven days' notice, according to its terms. Its possible bearing in this cause is not made to appear.

The cause of the plaintiffs as pleaded and disclosed in the depositions is a proper one for disposition under Rule 56 in my opinion.

The quotation in defendant's brief from Sartor et al. v. Arkansas Natural Gas Corp., 321 U.S. 620, at page 627, 64 S.Ct. 724 at page 728, 88 L.Ed. 967, accurately depicts the situation here revealed:

"The Court of Appeals below heretofore has correctly noted that Rule 56 authorizes summary judgment only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, that no genuine issue remains for trial, and that the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." (Citing cases.)

The facts in that case were too remote for present recital, but the statement of the principle which should guide this court, applies directly to this cause. While there is no jury issue, the only question that a court can pass upon is the improper display of the plaintiffs' symbol, emblem and trade-mark. That is shown too clearly to admit of argument. Consequently the motion of the plaintiffs must be granted, and the order is to provide for a decree as prayed in the complaint, with costs.

Settle order.