**AMERICAN TRAMPOLINE COMPANY, Plaintiff,**

**v.**

**AMERICAN TRAMPOLINE CORP. OF N. Y., Defendant.**

United States District Court
S. D. New York.
Oct. 4, 1960.

---

Fink, Weinberger, Levin & Gottschalk, New York City, for plaintiff, Bennett Frankel, New York City, of counsel.

Simon Klein, New York City, for defendant.

HERLANDS, District Judge.*

Plaintiff seeks an order *pendente lite* enjoining defendant from using the

name "American" in conjunction with the manufacture, sale or advertising of trampoline equipment.

The action for a permanent injunction and damages was commenced August 10, 1960. A temporary restraining order was granted by Judge Lloyd F. MacMahon on August 19, 1960.

Plaintiff (an Iowa corporation, with its principal place of business at Jefferson, Iowa) manufactures a tumbling device consisting of a framework having flexible strap members, known as a trampoline. Plaintiff is the sole owner of the trademark "American" (Reg. 693,-795) for use on such device. Plaintiff and its predecessors have used said mark since 1956 in connection with the sale of their goods and equipment.

Defendant is a New York corporation, organized under the laws of the State of New York on or about June 3, 1960. It sells trampoline equipment in New York and surrounding states.

The relief sought is predicated on the contention that the defendant's use of the name "American" in its business name and on its trampoline equipment is without license or right; and is thus both an infringement on plaintiff's trademark and a wrongful attempt to appropriate the goodwill of the plaintiff's business.

Defendant, in contesting this application, submits that it has been using its corporate name by right, and that it was authorized to sell "American" products by the plaintiff's agents and affiliates. Affidavits were submitted by Meredith Shriver, Vice-President of plaintiff, and Richard Simon, President of defendant.

A reading of the affidavits led to a close and unresolved conflict: defendant claims that it used the name "American Trampoline Corp. of N.Y." with the express consent, knowledge and approval of plaintiff; plaintiff vigorously asserts that it never gave its consent, expressly or impliedly, to defendant's use of the

* All page references in this opinion are to the transcript of the stenographer's minutes of the hearing before the court held on September 15, 1960.

name "American Trampoline Corp. of N.Y.," but that, on the contrary, as soon as it learned of defendant's use of such name in or about the middle of June, 1960, it demanded that defendant cease and desist from such use. Admittedly, defendant never received written consent from plaintiff. Likewise admittedly, plaintiff sent a written demand to defendant that it cease and desist.

In view of the paper record, the court directed that counsel appear with their witnesses at a hearing for the taking of live testimony. On September 15, 1960, at a session lasting from 10:30 a.m. to 4 p.m., the court took the testimony of Richard Simon and Christopher Boomis, the president and general manager, respectively, of defendant-corporation, and of Meredith Shriver, an officer and director of plaintiff-corporation.

Simon and Shriver are the rival affidavit-protagonists.

Upon the hearing, however, it appeared that Simon had very little recollection of the essential facts involved, as he had delegated the major part of his business, so far as the issues herein are involved, to Christopher Boomis and Henry Neulist. Simon's contribution to the record consisted of the assertion that he saw Shriver on one or more occasions in June 1960 at defendant's office (8), at which time Shriver read (43), but did not protest against (44), the use of the name "American Trampoline Corp. of N.Y." on advertising literature of defendant. The substantial testimony offered in behalf of defendant was adduced by Boomis.

The critical points covered by his testimony and related exhibits are as follows:

(1) After a number of telephone calls to Shriver in May 1960, Shriver and Boomis, in the presence of Neulist, met in New York (49) and discussed the possibility of Masonry Construction Corp. becoming the exclusive distributor of plaintiff in four eastern states (50) and the setting up of a separate corporation for such purpose. On or about May 18, 1960, Boomis and Neulist prepared and handed to Shriver a proposed agreement (51) which was never signed (56).

(2) This proposed agreement designated the proposed distributor-corporation as "Trampoline Corp. of New York," the word "American" having been omitted from the then proposed corporate name. Boomis testified that the New York Secretary of State refused authorization for the use of "Trampoline Corp. of New York" as a corporate name (55).

(3) According to Boomis, Shriver said he would take the proposed contract with him and, after it was signed, return it to defendant (54). This was never done. Instead, Boomis says, he telephoned Shriver about two weeks later and, in the ensuing telephone conversation, Shriver allegedly told Boomis that he would be back in New York in several weeks (56). Taking Boomis's testimony at face value, it was at best an equivocal statement that Shriver made: Boomis does not say that Shriver would return with a signed contract or that, in the meanwhile, defendant could operate under an oral agreement.

(4) Boomis also testified that, by about June 4, 1960, defendant caused to be printed a supply of salesmen's calling cards (Defendant's Exh. D) and brochures on which the name "American Trampoline Corp. of N.Y." was used. That name also was used on printed order blanks; it has been and is being used in connection with defendant's bank account.

(5) Boomis flatly insists that Shriver, at the time of his visits to defendant's office, was fully aware of the use of that name on defendant's cards, literature, etc., and that Shriver at no time objected to such use (61). Boomis testified that Shriver said that defendant could use the name American Trampoline Corp. of N.Y. as long as defendant did business with plaintiff and with no one else (61).

Boomis claims that plaintiff's knowledge of defendant's name is further established by the circumstance that he (Boomis) sent a large number of written

reports on the follow-up of sales leads to plaintiff, which reports were mailed in envelopes on which was printed the name "American Trampoline Corp. of N.Y." (68; Defendant's Exh. L); also that, as late as July 13, 1960, plaintiff continued to do business with Masonry Construction Corp., whose principals were the same as those of defendant-corporation (Defendant's Exh. H). In sum, Boomis thus asserts that there was oral and implied consent by plaintiff to defendant's use of the name in controversy.

(7) In the early part of June—on or about June 3, 1960—defendant was incorporated under its present name (56). Thereafter, and until sometime in August 1960, defendant inserted an advertisement in the New York Times three times a week, in which advertisement it used the name "American Trampoline Corp." It has placed similar advertisements in a number of Connecticut and New Jersey newspapers.

(8) Not content with using the name "American Trampoline Corp." in the New York Times on July 21, 1960 (101; Plaintiff's Exh. 3), it used the name "American Trampoline Corp." in a Detroit, Michigan, newspaper presumably on or about the same date (102; Plaintiff's Exh. 4). Defendant makes no attempt to explain the basis or justification for its use of the name "American Trampoline Corp." in conjunction with which defendant's address of 244 Madison Avenue, New York, was used.

Pursuant to the request of the court made at the hearing held on September 15, 1960, and in accordance with the stipulation of counsel (163–164), defendant has submitted to the court copies of the newspaper advertisements placed by defendant in newspapers in New York City and in a large number of other cities on the Eastern Coast. These advertisements have been examined by the court. The examination disclosed that defendant has submitted a total of fifty-two advertisements, of which eighteen were in the New York Times. This covers the period of June and July 1960.

In every instance, the defendant used the name "American Trampoline Corp." The defendant did not use its own corporation name "American Trampoline Corp. of N.Y." The proof of infringement is overwhelming.

The testimony of Shriver, a Vice-President and Director of plaintiff, contradicted that of Boomis. Shriver testified that there never was any written or oral agreement with defendant or its principals through which it was to become an exclusive distributor in the four-state area (76). Shriver testified that he gave defendants several reasons for this: (a) that there was already an exclusive distributor for the whole East Coast (76); (b) that plaintiff did not have any credit information concerning defendant (76) and would not get tied up with defendant at least until further information or dealings suggested the feasibility of such a relationship (84).

Shriver testified in effect that he committed no act which could form the basis of implied consent (146–149). In addition, Shriver testified to the following essential points:

Plaintiff had a federal registered trademark "American Trampoline" since 1956, when apparently the use of trampolines had become a "craze" or a fad, and the use of trampolines was even the subject of an article in Life Magazine. Plaintiff had an exclusive distributor in the East (Shriver-Van-Horn Products, Inc.) and was wary of dealing with defendant's principals on a credit basis. It is undisputed that plaintiff agreed to sell and did sell trampolines to defendant only when payment was made by sight draft or certified check delivered to a bonded warehouse (Morgan & Bro.), where plaintiff had a supply of trampolines. Plaintiff's lack of credit confidence in defendant's principals is incontrovertible and, indeed, is uncontroverted.

Shriver met with Boomis, Neulist and, on some occasions, with Simon; and it was Boomis, together with Neulist, who drew up the proposed agreement (Plaintiff's Exh. 1) for a distributorship, which

agreement was never signed. In this proposed agreement, the only name mentioned was "Trampoline Corporation of N.Y." The parties discussed the risk involved in using that name, because another company (Nissen Trampoline Company) was asserting exclusive rights to the use of the name "Trampoline" and two or three other names were mentioned as possible corporate names. However, Shriver asserts that the name "American Trampoline Corp. of N.Y." was never discussed (82, 144).

At no time prior to approximately June 15, 1960, did Shriver know that defendant was using the name "American Trampoline Corp. of N.Y.," either as its corporate name or on salesmen's calling cards, advertisements or similar printed matter. When, in the middle of June, he first saw the name on salesmen's cards, he told defendant's representatives to stop using that name (83). When, shortly thereafter, he saw the name on a brochure, he told defendant to stop using that name (142). On many occasions during the period from about June 15th to the middle of July, Shriver told defendant's representatives to stop using the name. Defendant told Shriver that they would stop using the name (127) but, at the same time, stated that it did not make much difference what name they used. During the period of the month that elapsed between the middle of June and the middle of July 1960, plaintiff took under advisement the matter of its legal rights, consulting with local and New York counsel; and eventually, on July 15, 1960, a cease and desist letter was sent to defendant. This was followed by a similar letter on July 20, 1960.

Although Neulist was present at a number of the important relevant conversations and is an employee of defendant, he was not produced as a witness by defendant. The non-production of an available witness having knowledge of material facts by defendant, who has control of such potential witness, may support the adverse inference that, if Neulist had been put on the stand, his testimony would not have been corroborative of defendant's position.

A close scrutiny of the testimony and a careful evaluation of the relative credibility of Boomis and Simon, on the one hand, and Shriver, on the other, leads to the clear and convincing conclusion that Shriver is telling the truth on the material issues herein. His testimony concerning the various incidents and episodes involved in this case is accepted by the court as believable and accurate.

Defendant for some weeks last past has discontinued using the name "American Trampoline Corporation of N.Y.," and its counsel advised the court during the hearing that defendant does not intend to resume using that name in connection with the sale, distribution and promotion of trampolines and trampoline equipment. However, American Trampoline Corp. of N.Y. is still maintaining its corporate existence, and it is operating one or more bank accounts in that corporate name.

On any balance of relative hardships, the scales tip decidedly in favor of plaintiff, who stands to lose much were defendant to resume using its name, whereas defendant, as a newcomer in the field, stands to lose relatively little.

An appraisal of the entire record, including the affidavits, documentary proofs and especially the *viva voce* testimony, leads to the conclusion that there is more than a reasonable probability that plaintiff will prevail upon the trial of this matter on the merits and that the requisite showing of a reasonable probability of success has been clearly established.

On the total record, the court is of the view, and so concludes, that plaintiff's motion for an injunction *pendente lite* should be and hereby is granted.

Defendant has unlawfully infringed plaintiff's duly registered trademark. Plaintiff did not give its consent, permission or approval, expressly or impliedly, to defendant's infringing acts. There is no justification, in law or in fact, for defendant's use of the name "American

"Trampoline Corporation of N.Y." in or in connection with the trampoline business.

This opinion and decision contains the findings of fact and conclusions of law required by F.R.Civ.P. section 52(a), 28 U.S.C.A. If either party deems it necessary or appropriate to propose additional or supplementary findings or conclusions, such submission shall take place within five days from the date hereof, upon due notice to the other side.

This decision and opinion constitutes an order.