**CONTINENTAL CONNECTOR CORPORATION**

v.

**CONTINENTAL SPECIALTIES CORPORATION.**

Civ.No. N–75–35.

United States District Court, D. Connecticut.

Nov. 21, 1979.

---

Ira Grudberg, and David L. Belt, Jacobs, Jacobs & Grudberg, New Haven, Conn., Harold James, James & Franklin, New York City, for plaintiff.

Anthony P. DeLio, DeLio & Montgomery, New Haven, Conn., for defendant.

## MEMORANDUM OF DECISION

NEWMAN, Circuit Judge.*

This trademark infringement suit involves the familiar but difficult problem of determining whether infringement has occurred absent proof of actual confusion. Section 32 of the Lanham Act, 15 U.S.C. § 1114 (1976), on which the principal question in this suit is based, prohibits the use of any trademark "likely to cause confusion or mistake or to deceive purchasers." Proof of actual confusion often satisfies this test; in many cases it will obviate the need for additional proof and vitiate any defense based on the absence of such proof. But

---

* Of the United States Court of Appeals for the Second Circuit, sitting by designation. At the time of the trial, Judge Newman was a District Judge of the United States District Court for the District of Connecticut.

actual confusion is often difficult to demonstrate; so courts frequently resort to the more indirect indicia of infringement, such as the similarity of the trademarks, competition between products, defendant's bad faith, and plaintiff's potential for business expansion. See *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 661–62 (2d Cir. 1970); *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc.*, 411 F.2d 1097, 1099 (2d Cir. 1969), *cert. dismissed*, 396 U.S. 1054, 90 S.Ct. 707, 24 L.Ed.2d 698 (1970); *I.T.S. Industria Tessuti Speciali v. Aerfab Corp.*, 280 F.Supp. 581, 586–88 (S.D.N.Y.1967). This case, which is one where no actual confusion had been proved, necessarily turns on such considerations.

Plaintiff, Continental Connector Corporation, and defendant, Continental Specialties Corporation, both manufacture products that are used to connect the wiring in electrical devices. Many of the products are plastic panels with a number of recessed holes or sockets into which electrical leads are placed. Wires or metal strips connect the sockets to form a circuit. The visual impression is not unlike a cribbage board.

The design and construction of electrical devices using these connectors involves three distinct stages. The first stage, generally known as "breadboarding," involves the design of a rough model of the circuitry; next, a prototype of the device capable of functioning in the same manner as the device itself is built; and finally, production of the actual device is undertaken. Plaintiff is engaged in the manufacture of connectors used primarily for prototype and production purposes, although a few of its products are usable in breadboarding. Defendant's products are used primarily in breadboarding, although some may be used for prototypes. Both types of connectors are sold to engineers, universities, and others engaged in the design and construction of electrical devices; in addition defendant's breadboarding devices are sold to hobbyists. The products are generally shipped directly to the customer on order, or marketed through a distributor.

The plaintiff entered the electrical connector industry in 1952 and has gradually expanded to its present size, with sales in excess of $10,000,000. Since its inception it has labelled the bulk of its products either with the word "Continental" (alone or in combination with "Connector" or "Connector Corporation" or with the initials "CCC"). In 1975, it registered two trademarks with the United States Patent and Trademark Office, the first consisting of the word "Continental" superimposed on a "CCC" design, and the second consisting of the same word superimposed on what appeared to be a circle design.[1] The following year, plaintiff registered the letters "CCC". It has since applied for an additional registration of the term "Continental," by itself. Plaintiff had expended relatively modest sums on advertising; the major part of these expenditures have been devoted to catalogues, catalogue sections, and listings in trade directories.

Defendant was created by its parent, North American Specialties Corporation, in 1973. It labels its products with the words "Continental Specialties," the initials "CSC," or both. Defendant's total sales are substantially smaller than the plaintiff's, but its advertising budget is somewhat larger.

The dispute between the two parties began in 1974, when defendant filed an application to register the trademark "Continental Specialties" with the Patent and Trademark Office. Plaintiff successfully opposed this registration and, later in that year, sent defendant a written demand to cease and desist from using either "Continental" or "CSC" as its trademarks. Several months later, plaintiff filed several applications of its own; three of these were granted, despite defendant's opposition, in 1975. This lawsuit was instituted by the plaintiff that

---

1. This second trademark was apparently an error, having been intended as a second "CCC" design. While defendant seems to emphasize this fact, it does not appear to be of any partic- ular relevance, since plaintiff's claim in this suit is based on its "Continental" and "CCC" trademarks, not on the circle design.

same year. It alleges violation of § 32 of the Lanham Act, 15 U.S.C. § 1114 (1976), and the common law of unfair competition. The relief it requests is an injunction against defendant's use of "Continental" or "CSC," against its further application for registration of these marks, and against its opposition to plaintiff's registration of related marks; in addition, plaintiff requests that defendant be required to deliver to plaintiff all items bearing the infringing marks, to provide an accounting for all profits derived from sale of electrical connector products, and to pay attorney's fees and costs. Defendant denies plaintiff's allegations; it requests that this Court order the Patent and Trademark Office to limit plaintiff's trademark to the specific types of electrical connectors that it actually produces,[2] and further requests an award of attorney's fees and costs.

At trial, plaintiff was unable to prove that any actual confusion of its products and those of the defendant had occurred. Its evidence of direct competition was limited to two of these products, and was open to serious attack by defendant as far as these two products were concerned. Plaintiff did establish, however, that its products moved in the same channels of trade as the defendant's, and that the two types of products often represent successive steps in the development of a single device. It also established that defendant's principal officers had knowledge of its trademarks when they adopted "Continental Specialties" and "CSC" as its own trademarks.

On the basis of this evidence, plaintiff argues that defendant's trademarks constitute direct infringement. Even if such direct infringement is not found, it argues, the likelihood that it will "bridge the gap" and begin producing products that compete directly with the defendant's renders defendant's trademarks and infringement in plaintiff's natural area of expansion. Defendant responds that its marks are sufficiently distinguishable from the plaintiff's, and that plaintiff's mark is a weak one in any event. Even if a similarity in trademarks is found, however, defendant argues that its products are basically different from the plaintiff's, so that no infringement has occurred. It also argues that plaintiff can provide no evidence that it is likely to bridge the gap between these products.

Before proceeding to assess these contentions, it is necessary to state the basic principles that govern this area of law. The best evidence that can be presented to satisfy the Lanham Act standard that the defendant's trademark is "likely to cause confusion or mistake or deceive purchasers" is proof of actual confusion. While such proof is not essential, see *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961); *Maternally Yours, Inc. v. Your Maternity Shop, Inc.*, 234 F.2d 538, 542 (2d Cir. 1956); *Glamorene Products Corp. v. Boyle-Midway, Inc.*, 538 F.2d 894, 188 USPQ 145, 148 (S.D.N.Y.1975), its absence necessarily presents the plaintiff with the more difficult and complex task of satisfying the Lanham Act standard by indirect means. The next best evidence, and the best evidence of an indirect nature, is proof that the trademarks are confusingly similar,[3] and that the defendant's goods are

2. Authority to issue such an order is granted by § 37 of the Lanham Act, 15 U.S.C. § 1119 (1976). Originally, the defendant counterclaimed for an order directing the Patent and Trademark Office to deny plaintiff registration of the mark "Continental". Plaintiff moved to dismiss this counterclaim for lack of federal jurisdiction. This Court held that jurisdiction existed, as the defendant's counterclaim was appropriately considered ancillary to the plaintiff's federal and diversity claims. *Continental Connector Corp. v. Continental Specialties Corp.*, 413 F.Supp. 1347 (D.Conn.1976). While the nature of defendant's counterclaim has now

changed, the basis for jurisdiction remains the same.

3. Confusing similarity is an issue of fact, *see Hershey Creamery Co. v. Hershey Chocolate Corp.*, 269 F.Supp. 45, 48, 55–56 (S.D.N.Y. 1967); *Haig & Haig, Ltd. v. Maradel Products, Inc.*, 249 F.Supp. 575, 577 (S.D.N.Y.1966), but it is one that is generally determined by the court, *see Venetianaire Corp. v. A & P Import Co.*, 302 F.Supp. 156, 158 (S.D.N.Y.1969), *aff'd*, 429 F.2d 1079 (2d Cir. 1970); *Swarthmore Classics, Inc. v. Swarthmore Junior*, 81 F.Supp. 917, 920 (S.D.N.Y.1949).

in direct competition with the plaintiff's. Such proof, while it does not demonstrate that actual confusion has occurred, makes the probability of such confusion quite substantial. If direct competition cannot be proved, the plaintiff must resort to the most problematical type of proof. It still must demonstrate confusing similarity of trademarks; that would seem essential where actual confusion is not shown. In place of proving direct competition, it must prove that its trademark is sufficiently well known, or that the goods it sells and the goods sold by defendant have a sufficiently close relationship, to establish a likelihood of confusion. Proof that the goods involved are closely related may be based on either the nature of the goods themselves or the structure of the market in which the plaintiff and defendant operate.

This ordering of preferred proofs, and the remedies that are provided when such proof is successfully presented, are grounded in the policies that underlie the Lanham Act. The basic purpose of the Act is to protect an established trademark user from being injured by another's use of the same trademark; the types of injuries involved are loss of patronage, loss of reputation, and limitation on business expansion. *Federal Telephone & Radio Corp. v. Federal Television Corp.*, 180 F.2d 250, 251 (2d Cir. 1950); *S. C. Johnson & Son v. Johnson*, 116 F.2d 427 (2d Cir. 1940). Proof of actual confusion virtually ensures that all three types of injuries have occurred.[4] Proof that plaintiff's and defendant's trademarks are confusingly similar, and that the two companies are in direct competition, raises a serious possibility of all three types of harm. Thus, either type of proof will justify both injunctive and monetary relief, although the extent of the relief will tend to be discounted by the lack of certainty involved when confusion must be proved indirectly. When proof of confusing similarity is combined only with evidence that the goods involved are closely related, the only injuries that can reasonably be inferred are loss of reputation and limitation of business expansion. Since no direct competition is involved, it seems unlikely that there would be any economic injury due to loss of patronage. Only injunctive relief is justified in such cases, and even that relief must be fashioned in light of the indirect quality of the proof.[5]

In the present case, plaintiff was not able to demonstrate any actual confusion. In addition, it did not demonstrate that its goods are in direct competition with the defendant's.[6] Conceding these facts, the main thrust of plaintiff's argument is that it can establish the third, most indirect proof of likely confusion: that defendant's trademarks are confusingly similar, and that its goods are closely related to those of the plaintiff. I hold that the plaintiff has met its burden of proof on these issues.

As far as confusing similarity of trademark is concerned, plaintiff relies on the identity of the dominant term in the

---

4. Plaintiff in this case argues that defendant's actions have damaged its reputation because the defendant's products are of inferior quality to its own. Defendant responds that its products are of equivalent quality and that any difference is due to the different purposes for which the two products are designed. A plaintiff's reputational interest, however, is not implicated only when defendant makes an inferior product. Since the plaintiff can assert no control over defendant's business practices, confusion between the two products allows the defendant to hold the plaintiff's reputation hostage, regardless of the relative quality of the products at the time of suit. *S. C. Johnson & Son, supra,* 116 F.2d at 427.

5. An additional policy that underlies the Lanham Act is the public's interest in not being misled about the origin of a particular product. *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1172 (2d Cir. 1976). This consideration will not support a claim for money damages to the plaintiff, but it does serve as an additional reason for granting injunctive relief.

6. Defendant did concede that it would fill orders for types of connectors it did not produce by obtaining these items from other manufacturers. This could place the defendant in direct competition with the plaintiff. However, there was no evidence that such competition had actually occurred nor that filling orders of this kind constituted a significant part of defendant's sales.

two company names, and on the visual and oral similarity between its "CCC" and defendant's "CSC". Defendant argues that plaintiff's "Continental" trademark is "weak," since the term is a common geographical description that has been used by numerous other companies in other product fields. It further argues that its own use of this word does not create confusion, as it has always used the word in conjunction with the word "Specialties."[7] Neither of these arguments is persuasive, however. Plaintiff's "Continental" trademark is a common enough term to be sure, but it is used by plaintiff as an arbitrary designation, not as a geographical description. See *Hamilton Shoe Co. v. Wolf Brothers*, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916) ("American Girl" not geographic term); *World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482, 485–87 (5th Cir. 1971) ("world" not geographic term); *Spice Islands Co. v. Spice Land Products, Inc.*, 262 F.2d 356 (2d Cir. 1959) ("Spice Islands" not geographic term); *Atlantic Monthly Co. v. Frederick Ungar Publishing Co.*, 197 F.Supp. 524, 529 (S.D.N.Y.1961) ("Atlantic" not geographic term); *American Trampoline Co. v. American Trampoline Corp.*, 188 F.Supp. 611 (S.D.N.Y.1960) ("American" not geographic term); 3 R. Callmann, *The Law of Unfair Competition, Trademarks and Monopolies* § 72 (3d ed. 1969 & Supp. 1978). In fact, the specific word in issue here was declared protectable in *Continental Motors Corp. v. Continental Aviation Corp.*, 375 F.2d 857 (5th Cir. 1967), in which the Fifth Circuit refused to follow an earlier case, *Continental Insurance Co. v. Continental Fire Association*, 101 F. 255 (5th Cir. 1900), holding "Continental" an unprotectable geographic term.

Nor can defendant prevail because it has added a word to the one it shares with the plaintiff. The added word, "Specialties," is a descriptive term, and clearly represents a subordinate element in the defendant's trademark. Even if the addition were more significant, however, it would not be sufficient to avoid creating a confusing similarity. Courts have repeatedly held that the confusion created by use of the same word as a primary element in a trademark is not counteracted by the addition of another term. See, *e. g., Miss Universe, Inc. v. Patricelli*, 408 F.2d 506 (2d Cir. 1969) ("Miss USA" and "Miss USA, World"); *Douglas Laboratories Corp. v. Copper Tan, Inc.*, 210 F.2d 453 (2d Cir.), *cert. denied*, 347 U.S. 968, 74 S.Ct. 779, 98 L.Ed. 1109 (1954) ("Coppertone" and "Copper Tan"); *Gucci Shops v. R. H. Macy & Co.*, 446 F.Supp. 838 (S.D.N.Y.1977) ("Gucci" and "Gucchi-Goo"); *Scholl, Inc. v. Tops E.H.R. Corp.*, 185 USPQ 754 (E.D.N.Y.1975) ("Comfort" and "Foot Comfort"); *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F.Supp. 255 (S.D.N.Y.1972) ("Geo. Washington Mint" and "Washington Mint"); *Swarthmore Classics, Inc. v. Swarthmore Junior*, 81 F.Supp. 917 (S.D.N.Y.1949) ("Swarthmore Classics" and "Swarthmore Junior").

Defendant also claims that its designation "CSC" and plaintiff's designation "CCC" are not confusingly similar. This claim is based on the fact that the two sets of initials are printed in different styles and in different colors on all products and advertisements. But defendant mistakes the degree of similarity that is required in such circumstances. Initials, by their very nature, are abbreviations, a shortened version designed to be comprehended at a glance. If the number of letters is the same, and there is a significant overlap in the letters used, that is generally sufficient to sustain a claim of similarity. See *Jackes-*

---

7. Defendant also urges that plaintiff's trademark is weak because the term "Continental" is used by numerous other companies. Again, this may be true, but it does not render the trademark unprotectable: "Prior use by another does not necessarily make a mark invalid but only limits the amount of protection to which a trade-mark may be entitled." *Standard Brands, Inc. v. Smidler*, 151 F.2d 34, 36 (2d Cir. 1945). Defendant further asserts that some of these prior uses have involved companies that manufacture products similar to those manufactured by the plaintiff. But it has presented no evidence to suggest that the electrical products manufactured by these companies are similar to the plaintiff's in any of the relevant ways in which plaintiff's and defendant's products are similar.

*Evans Manufacturing Co. v. Jaybee Manufacturing Corp.*, 481 F.2d 1342 (Cust. & Pat. App.1973) ("JE" and "JB" confusingly similar); *Colgate-Palmolive Co. v. Rafidane Corp.*, 127 USPQ 253 (S.D.N.Y.1960) ("FAB" and "LAV" confusingly similar, despite difference in packaging); *American Automobile Association v. Rothman*, 101 F.Supp. 193 (E.D.N.Y.1951) ("AAA" and "H.A.A." confusingly similar). Here it is difficult to see how plaintiff's and defendant's designation could have been more similar in content without being precisely the same. In fact, initials with the precise similarity at issue here, a three-letter configuration with the same first and last element, and have been held to constitute infringement in at least two cases. See *Grove Laboratories, Inc. v. Brewer & Co.*, 103 F.2d 175 (1st Cir. 1939) ("L.B.Q." and "LPQ"); *Helen Schy-Man-Ski & Sons v. S.S.S. Co.*, 73 F.2d 624, 22 CCPA 701 (1934) ("S.M.S." and "S.S.S."); *cf. Photographic Trade News, Inc. v. Photo Industry News, Inc.*, 115 USPQ 200 (N.Y.Sup.Ct.1957) ("PIN" and "PTN") (state law of unfair competition).

■ Since plaintiff cannot prove that its mark competes directly with defendant, it must not only prove confusing similarity between the trademarks, but must also prove that its goods and the defendant's are closely related. This relationship may be demonstrated in terms of the nature of the goods themselves, or in terms of the structure of the market. Proof of relationship based on the nature of the goods satisfies the Lanham Act standard because the consumer's expectation that related products with similar trademarks come from the same source will create confusion or mistake. See *Standard Brands, Inc. v. Smidler*, 151 F.2d 34 (2d Cir. 1945); *Wall v. Rolls-Royce*, 4 F.2d 333 (3d Cir. 1925); *Time, Inc. v. Barshay*, 27 F.Supp. 870 (S.D.N.Y.1939). Such proof is necessarily a matter of inference, based on a judicial examination of the product's characteristics and uses. Proof based on the market can consist of an examination of the channels of trade in which the product is carried, or the fact that plaintiff plans to begin producing defendant's product or the fact that other companies that manufacture the plaintiff's product also manufacture the defendant's. This also satisfies the Lanham Act standard of likely confusion; in addition, it raises the possibility that the plaintiff will "bridge the gap" by expanding into defendant's area, in which case additional confusion will result and plaintiff's business opportunities will be limited. See *Scarves by Vera, Inc. v. Todo Imports, Ltd.*, 544 F.2d 1167, 1174–75 (2d Cir. 1976); *Avon Shoe Co. v. David Crystal, Inc.*, 279 F.2d 607, 613 (2d Cir.), *cert. denied*, 364 U.S. 909, 81 S.Ct. 271, 5 L.Ed.2d 224 (1960) (dictum); *Atlantic Monthly Co. v. Frederick Ungar Publishing Co., supra*, 197 F.Supp. at 533; *L. S. Starrett Co. v. Aaron Machine Co.*, 160 F.Supp. 805 (E.D.N.Y.1958). Such proof, being based on observed phenomena, is generally of a more empirical nature.

■ The plaintiff in this case argues that it has demonstrated all these types of proof. Plaintiff's evidence that its products are carried in the same channels of trade as the defendant's—that they are distributed through the same mechanisms and reach the same purchasers—is reasonably persuasive. Both plaintiff and defendant sell some of their products to the same intermediaries, in the case of catalogues, or types of intermediaries, in the case of distributors. There is thus some basis for finding a likelihood of confusion between these products. See *Kiki Undies Corp. v. Promenade Hosiery Mills, Inc., supra*, 411 F.2d at 1110; *Fancee Free Manufacturing Co. v. Fancy Free Fashions, Inc.*, 148 F.Supp. 825, 828 (S.D.N.Y.1957); *Aluminum Cooking Utensil Co. v. Sargoy Bros.*, 276 F. 447 (E.D.N.Y. 1921); *Masterpiece of Pennsylvania, Inc. v. Consolidated Novelty Co.*, 186 USPQ 134 (S.D.N.Y.1975) (specific reference to trade journals); *Northmont Hosiery Corp. v. True Manufacturing Co.*, 100 F.Supp. 909, 913 (E.D.Wis.1951) (same). It should be noted, however, that modern marketing methods tend to unify widely different types of products in the same retail outlets or distribution networks, and there has been some reluctance by courts to base a finding of likely confusion entirely on a similarity in

channels of trade. See *Gold Dust Corp. v. Hoffenberg*, 87 F.2d 451 (2d Cir. 1937); *King Research, Inc. v. Shulton, Inc.*, 324 F.Supp. 631, 638 (S.D.N.Y.1971), aff'd, 454 F.2d 66 (2d Cir. 1972); *Co-Ed Originals, Inc. v. Mutual Garment Co.*, 58 F.Supp. 17 (S.D. N.Y.1944).[8]

A stronger argument that plaintiff's and defendant's products are closely related is based on the nature of the products themselves. The two sets of products have similar structures, consisting of a plastic housing with conductive metal contacts inside it, and external openings through which electrical leads are inserted. They are very similar in appearance. They also have similar functions, being used to make connections between electrical components without the need for soldering. And they are used in successive stages of the design and production process of the very same electrical devices. Even without any direct evidence that a significant number of companies make both products, it seems likely that many buyers would assume that two such similar products, bearing such similar trademarks, originated from the same source. Many products that exhibit far greater differences than the ones involved in the case have been held sufficiently related to support a finding of possible confusion. See, e. g., *Wall v. Rolls-Royce, supra* (automobiles and airplanes related to radio tubes); *Aunt Jemima Mills Co. v. Rigney & Co.*, 247 F. 407 (2d Cir. 1917), cert. denied, 245 U.S. 672, 38 S.Ct. 222, 62 L.Ed. 540 (1918) (pancake syrup related to pancake flour); *HMH Publishing Co. v. Turbyfill*, 330 F.Supp. 830 (M.D.Fla.1971) (magazines and restaurants with entertainment related to movie theaters); *Textron, Inc. v. Spi-Dell Watch & Jewelry Co.*, 156 USPQ 497 (S.D.N.Y.1968) (watches related to watch bands); *Colonial Radio Corp. v. Colonial Television Corp.*, 78 F.Supp. 546 (S.D.N.Y.

1948) (televisions related to radios); *Time, Inc. v. Barshay, supra* (phonograph record related to radio broadcasts and newsreels).

The third type of indirect proof of infringement—that the plaintiff is likely to "bridge the gap" between its products and those of the defendants—presents more difficulties in this case. The plaintiff has no present plans to manufacture or sell defendant's products. Only two companies, out of several dozen in the field, produce both plaintiff's products and defendant's; in each case, only a small proportion of these companies' total production is responsible for the overlap. However, given the similarity of the products themselves, the technology required to produce them, and the channels of trade in which they move, the defendant seems to be trading in a significant part of plaintiff's natural area of business expansion. This being the case, the evidence that has been presented is adequate to establish plaintiff's bridging the gap argument.

It is true that indirect proof concerning channels of trade, similarity of product, or likelihood that the plaintiff will bridge the gap involves an inevitable degree of uncertainty. It is also true that plaintiff's trademark is weak, although this may be counterbalanced by the virtual identity between its marks and the defendant's. But there is one further issue in this case that argues strongly in favor of the plaintiff. The defendant was aware of plaintiff's trademark when it selected its own. Its parent, North American Specialties, had business dealings with the plaintiff; the man who was to become defendant's Vice-President and Treasurer had visited plaintiff's factory and personally acknowledged several orders from the plaintiff while he was an employee of North American. Both he and the defendant's future president conceded that

---

8. It is true, as defendant argues, that most of the buyers in this highly specialized field are experts. However, they are experts with respect to the technological properties of the products involved, not their commercial provenance. Consequently, the specialized nature of the industry does not decrease the likelihood of confusion without more specific proof that the

buyers in question were aware of difference between the companies. *See Communications Satellite Corp. v. Comcet, Inc.*, 429 F.2d 1245, 1252–53 (4th Cir.), cert. denied, 400 U.S. 942, 91 S.Ct. 240, 27 L.Ed.2d 245 (1970); *Hydrotechnic Corp. v. Hydrotech International, Inc.*, 196 USPQ 387, 392–93 (T.T.A.B.1977).

they were aware of plaintiff's existence and trademarks at the time they chose the name "Continental" for the new company.

■ These facts resolve any remaining doubts in favor of the plaintiff. Defendant argues that it adopted the name "Continental" in good faith, and offers the explanation that it wanted a name somewhat associated with the name of its parent, North American, but did not use the same name for fear of prejudicing foreign buyers. This explanation is neither credible nor plausible. Those who feared that foreign buyers would shun a company named "North American" would not select a name for the purpose of conveying an association with a company so named. Courts have not hesitated to reject such *ex post facto* creativity where there is an obvious connection with the tradename of another company. See *R. H. Macy & Co. v. Macy's Drug Store, Inc.*, 84 F.2d 387 (3d Cir. 1936) (rejecting explanation that name "Macy" was chosen for drug store on basis on last two syllables in "pharmacy"); *Slayton v. House of Sebastian, Ltd.*, 151 USPQ 33, 35 (S.D.N.Y.1966) (rejecting explanation that name "Sebastian" chosen because of its "Spanish or continental sound"); *Swift and Co. v. Ray Sales Co.*, 13 F. Supp. 340 (S.D.N.Y.1935)

(rejecting explanation that name "Swift" chosen to suggest rapidity with which product takes effect).[9]

■ I conclude that plaintiff is entitled to injunctive relief, but has not demonstrated the type of economic injury that would entitle it to money damages.[10] Plaintiff shall submit within thirty days, with notice to defendant, a proposed form of injunction, with appropriate provision affording defendant a reasonable time (a) to continue use of its infringing marks where such marks appear on existing inventory and (b) to add the phrase "Formerly Continental Specialties Corp." below its corporate name.

Plaintiff may recover its costs, but not attorney's fees.[11]

9. Even if defendant's argument that it chose its name entirely in good faith were accepted, that would not provide an adequate answer. Trademark law imposes a higher duty on a merchant than the mere avoidance of a calculated fraud; it requires him to exercise a reasonable amount of care to prevent the confusion or deception of potential purchasers. When a company selects a name that is virtually identical to another company's for a product that is clearly related to that other company's product, it violates the required standard of care. See *American Chicle Co. v. Topps Chewing Gum, Inc.*, 208 F.2d 560, 562–63 (2d Cir. 1953); *Miles Shoes, Inc. v. R. H. Macy & Co.*, 199 F.2d 602 (2d Cir. 1953), cert. denied, 345 U.S. 909, 73 S.Ct. 650, 97 L.Ed. 1345 (1953); *Atlantic Monthly Co. v. Frederick Unger Publishing Co.*, supra, 197 F.Supp. at 532–32; 3 R. Callmann, supra, § 82.2(b)(2) at 789; cf. *Time v. Ultem Publications, Inc.*, 96 F.2d 164 (2d Cir. 1938) (it rests with imitator to disprove natural inference that he intended to create confusion, even in absence of further proofs).

10. Plaintiff also asserts a claim under the common law of unfair competition, but has presented no argument to suggest that it would have

any common law remedies that in any way exceed the remedy provided under the Lanham Act. In fact, there is no support for the contention that the common law of unfair competition, in either Connecticut or New York, would provide money damages without proof of actual confusion or direct competition.

11. In view of the foregoing opinion, I do not think it necessary to issue any specific orders to the Patent and Trademark Office. This Court has previously held that all the issues presented by this case should be adjudicated, in the interest of judicial economy, rather than deferring to the primary jurisdiction of the Patent and Trademark Office on the registration questions. *Continental Connector Corp. v. Continental Specialties Corp.*, 413 F.Supp. 1347 (D.Conn.1976). However, since nothing in this opinion requires a change in the status quo as far as registrations are concerned, there is no need to issue an order to the Patent and Trademark Office. Any subsequent registration questions can be answered by that Office on the basis of this opinion and its own expertise.